**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KIP ANTONIO SMITH,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | Case No. 02-CV-0601-CVE-PJC |
| ) | |
| **WALTER N. DINWIDDIE,**[1] ) | |
| ) | |
| **Respondent.** ) | |

**OPINION AND ORDER**

On May 14, 2004, this Court denied the Petition for Writ of Habeas Corpus (Dkt. # 1) filed by petitioner Kip Antonio Smith ("Smith"), pursuant to 28 U.S.C. § 2254, challenging the sentence he received (15 years) in Case No. CF-99-104, Tulsa County, State of Oklahoma, after conviction by a jury for sexually abusing a minor child. Smith appealed, and the United States Court of Appeals for the Tenth Circuit, by Order and Judgment entered May 17, 2005 (Dkt. # 37), remanded the matter and directed this Court to reconsider the merits of the petition in light of juvenile court records unavailable at the time of its earlier decision, as well as transcripts underlying the state criminal case brought against Smith.[2] This Court subsequently granted Smith's Motion for Leave to Proceed In Forma Pauperis (Dkt. #38) and, pursuant to the provisions of 18 U.S.C. § 3006A, appointed counsel to represent Smith. The Court then set deadlines and a briefing schedule, and the case is at issue.

---

[1]   Walter N. Dinwiddie has been substituted for Steve Beck by operation of law pursuant to Fed. R. Civ. P. 25(d)(1).

[2]   Prior to its earlier decision, over a six-month period, this Court attempted to obtain the entire record, without complete success, in part due to reluctance by the state court to release sealed juvenile records. In light of Smith's repeated requests (including a petition for writ of mandamus) for a determination by this Court on the merits despite the respondent's inability to produce the entire record, the Court felt compelled to rule based upon the most complete record that could be obtained at the time.

**I.**

The facts and evidence as set forth in this Court's prior order are repeated here in revised form based upon the evidence that was previously unavailable: In 1998, the Tulsa County District Attorney filed a petition in the Juvenile Division of the District Court of Tulsa County, alleging that two of Smith's daughters, E.S. and K.S., were deprived children within the purview of the Oklahoma Children's Code (Okla. Stat. tit. 10, § 7001-1.1 et seq.) The State's allegations included sexual abuse by Smith of B.J. and A.S.[3], half-sisters to E.S. and K.S. At the time, Smith was divorced from the mother of E.S. and K.S., and Smith had custody. The State requested that the juvenile court adjudicate E.S. and K.S. to be deprived children and to terminate immediately and permanently the parental rights of Smith to E.S. and K.S.

Trial commenced on January 19, 1999 and continued until January 21, 1999. Smith, B.J., A.H., a social worker, and a certified nurse practitioner testified. Prior to returning a verdict, the jurors sent this note to the judge: "[I]f we feel that [B.J.] was abused but not by Kip Smith, should we still consider that [E.S.] and [K.S.] are deprived since Kip Smith has no control over [B.J.]?" Jury Trial Tr., filed 5/24/05, at 55:25 - 56:3. A second note sent to the judge read: "We are close. Please reaffirm the following: If we say the children are deprived, are we in any way indicating [sic] Kip Smith in sexual abuse and altering his parental rights; or are we only moving on to possibly more evidence regarding his actual actions?" The jury then returned a verdict on January 22, 1999, finding E.S. and K.S. to be deprived children as to Smith.

---

[3] More recent submissions indicate that A.S. has a surname that begins with "H," not "S." The remainder of this order references "A.S." as "A.H."

2

However, the jury also answered "no" to four special interrogatories, two of which are relevant here: "Has the natural father sexually abused a child or a sibling in a manner that is shocking and heinous; or . . . Has the natural father sexually abused a child or a sibling in a manner which caused severe harm or injury to said child . . . ?" The juvenile court judge had begun to discharge the jurors, when one juror remarked: "We didn't know that sheet was -- those questions were going to terminate. . . . We thought we were going to have another question to decide, the parental rights." Id. at 60:17-21. The judge briefly excused the jurors to discuss the matter with the attorney for the State, the attorney for Smith, and the attorney for the children.

The prosecutor stated: "Based on the jury's interrogatory findings that they don't feel like Mr. Smith was the perpetrator, I don't know how they came up with a deprived finding, but I don't think I can proceed on the second stage." Id. at 61:5-8. Defense counsel argued that there was no basis for a deprived finding since the jurors found that Smith had not abused the children or failed to protect them from abuse. Id. at 61:10-21. The Court commented:

> The State in this case filed a petition alleging sexual abuse that was of a shocking and heinous nature and requested immediate termination. The jury by its verdict and by the answers to the interrogatories are saying that they do not find that the natural father sexually or physically abused these children, and that he didn't fail to protect a sibling or these children from sexual or physical abuse. So, that means that they had to find the children to be deprived under one of these other grounds in the statute.

Id. at 62:11-19. The judge also stated, in response to a remark by the attorney for the children: "I don't think the jury is confused. The jury made it clear to me that they thought after they found the children to be deprived that they were going [to] move to termination." Id. at 63:17-20.

The judge also remarked about the manner of abuse as reflected in the special interrogatories. He said that he could not proceed to terminate Smith's parental rights since the jurors did not find

3

that the child was physically or sexually abused in a shocking and heinous manner. Id. at 63:22 - 64:7. He explained to defense counsel: "I have a deprived verdict, but I don't have a shocking and heinous finding based on physical and sexual abuse." Id. at 66:8-10. He then explained to the jurors:

> Ladies and gentlemen of the jury, you reached a verdict finding that the two minor children in this case were deprived children. You, also, came to the conclusion that based on the evidence presented at trial, that they were not deprived based on sexual or physical abuse of a shocking and heinous nature. That is one of the requirements under the law in order for the State of Oklahoma to proceed with immediate termination, which would have been the second part of this trial. Based on your answers to those questions, the State of Oklahoma is not going to be able to proceed with immediate termination.

Id. at 67:5-14.

The State filed a motion for new trial, and a hearing was held on March 26, 1999. In the motion for new trial, the State declared: "The jury did not find as evidenced by their answers, that the natural father Kip Smith has sexually abused the two older siblings [B.J. and A.H.] or failed to protect them from sexual abuse." Motion for New Trial, filed 2/26/99, at 2 (attached as part of State Court Record of JVD-98-254, Dkt. # 20). The State wrote: "The interrogatories specifically inquired whether the jury believed that the natural father had sexually abused either [E.S] or [K.S.] or their siblings. Because the jury answered 'no' to each interrogatory, the verdict of deprived is unsupported by the evidence." Id. at 3.

At the hearing on the motion for new trial, the State argued that it was not the prevailing party because it did not receive the requested relief and that the general verdict was contrary to the finding of the special interrogatories. Motion for New Trial Tr., filed 5/24/05, at 3:13-19. In particular, the State contended that there was no evidence of deprivation other than that Smith had

4

sexually abused two children in the home. Id. at 4:1-5; 11:14-19; 15:11-13. In denying the motion, the juvenile court judge stated: "This matter went to jury trial, and the jury in that case came back with a verdict that these minor children were children deprived as to their natural father. And they answered the interrogatories with reference to whether or not the father had sexually abused or failed to protect these children from sexual abuse, and they answered those interrogatories in the negative." Id. at 31:12-17. The juvenile court determined that the State was the prevailing party, but the case could not proceed to the termination phase because "[t]here was more than sufficient evidence presented at this trial for the jury to find that these children were deprived for [ ] reasons" other than sexual abuse. Id. at 33:18 - 34:18.

Repeated references in later reports to the juvenile court filed by an Oklahoma Department of Human Services social worker indicate that "the jury found the children to be deprived; the jury believed that [B.J.] had been sexually abused, but was unsure of the perpetrator." State Court Record of JVD-98-254, Dkt. # 20, Court Reports, filed Feb. 11, 1999, Oct. 1, 1999, Dec. 20, 1999, at 2. Other court reports indicate that Smith was ordered by the juvenile court, as part of a treatment plan, to attend "non-perpetrator sexual abuse education and counseling" after the jury trial. Id. at 3; see Disposition Order, filed Aug. 19, 1999, at 1.

On January 12, 1999, just prior to the trial in juvenile court, the Tulsa County District Attorney filed an information charging Smith with sexually abusing a minor child (B.J.) in violation of Okla. Stat. tit. 10, § 7115. On May 14, 1999, Smith filed a motion to dismiss based upon the

5

doctrine of collateral estoppel,[4] arguing that the State was barred from prosecuting him in light of the jury's finding in juvenile court that he had not sexually abused B.J. The State argued that the ultimate facts at issue in the juvenile case were distinct and separate from the ultimate facts in the criminal case because the State was not required to prove, in the criminal matter, that Smith sexually abused B.J. in a manner that was shocking, heinous, or in a manner that caused severe harm or injury.

On July 30, 1999, the district court held an unrecorded hearing on the motion to dismiss and denied the motion without issuing a written order or findings. A jury trial was held March 6-9, 2000. In addition to the witnesses who testified for the State in the juvenile proceedings, B.J.'s mother and the police detective who investigated the allegations of abuse against B.J. testified at the criminal trial. The jury convicted Smith, and he was sentenced on May 8, 2000.

**II.**

Smith filed a direct appeal in which he raised the following proposition of error:[5] "The trial court erroneously failed to dismiss the case because of the prior jury determination of the factual issue of sexual abuse of the alleged victim by Appellant." Petition, Dkt. #1, Ex. A, at 1, ¶ 2. The OCCA held a hearing and subsequently issued a summary opinion affirming the judgment entered in the district court. Smith v. State, 2002 OK CR 2, 46 P.3d 136 (Okla. Crim. App. 2002).

---

[4]   Smith refers to this argument as his "double jeopardy" argument although, as explained by the Oklahoma Court of Criminal Appeals ("OCCA"), the doctrine of collateral estoppel is the more accurate description of the theory advanced by Smith's defense counsel.

[5]   Smith also raised two other propositions that he does not raise in his habeas petition; consequently, they are not relevant here.

As grounds for his federal habeas petition, Smith claims that the: (1) "Charges brought against petitioner in state court stemmed from the same incident as juvenile court"; (2) "Oklahoma District Court Judge did not have jurisdiction to take petition [through] a second trial"; and (3) "Oklahoma Court of Criminal Appeals did not have jurisdiction to affirm the petitioner's case." The Court finds that these three "grounds" are actually three different aspects of the single argument that the Court should apply the doctrine of collateral estoppel to his case: the first ground sets forth the basic argument; the second ground specifically challenges the denial of his motion to dismiss in the district court; and the third ground charges the OCCA with not giving appropriate consideration to the juvenile court's denial of the motion for new trial in the juvenile proceedings. Smith acknowledges, in his reply brief, that his petition is based on a single ground of error. (Petitioner's Rebuttal to Respondents' Response to Petition for Writ of Habeas Corpus ("Rebuttal"), Dkt. # 7, at 4.) Accordingly, there is no question that Smith has exhausted his state court remedies.

Smith requests an evidentiary hearing, but an evidentiary hearing is not required. There is no indication that Smith failed to develop the factual basis of the claim in the state court proceedings. Smith would be entitled to an evidentiary hearing if (1) his allegations, if true and not contravened by the record, would entitle him to habeas relief; (2) the facts were in dispute; and (3) he did not receive a full and fair evidentiary hearing in a state court. See Miller v. Champion, 161 F.3d 1249, 1252-53 (10th Cir.1998) (citing Medina v. Barnes, 71 F.3d 363, 366, 369 (10th Cir. 1995)); see also Bryan v. Mullin, 335 F.3d 1207, 1214 (10th Cir. 2003). These criteria are not met in this case. The issue here is whether the doctrine of collateral estoppel barred the State from

prosecuting Smith for sexually abusing a minor child.[6]  Smith's claim is capable of resolution on the record.

### III.

Habeas corpus actions requiring review of state court judgments and sentences are governed by 28 U.S.C. § 2254. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, tit. I, § 101 (1996). The AEDPA established a more deferential standard of review of state court decisions in habeas corpus cases. Under the AEDPA, a federal court may entertain an application for writ of habeas corpus from a prisoner held in state custody only on the ground that the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §§ 2241, 2254(a).

The OCCA adjudicated Smith's claim on the merits. Thus, he will be entitled to federal habeas relief only if he can establish that the OCCA's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In Terry Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring), the Supreme Court provided guidance in applying § 2254(d)(1) as follows:

> § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal

---

[6] Smith has asserted his actual innocence, but there is no related procedural issue necessitating an analysis of whether this matter involves a "fundamental miscarriage of justice." Such analysis would be required if Smith were challenging the application of a procedural bar by the OCCA. See generally Schlup v. Delo, 513 U.S. 298, 311 (1995); Coleman v. Thompson, 501 U.S. 722, 750 (1991). Here, the OCCA considered the merits of Smith's claim.

8

> habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. The Court further commented that:

> an *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11. The relevant inquiry under this clause, therefore, is "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409.

The Court further addressed the meaning of the phrase "clearly established Federal law." The phrase restricts the source of clearly established law solely to the Supreme Court's jurisprudence – "the holdings, as opposed to dicta, of [the] Court's decisions as of the time of the relevant state-court decision." Id. at 412. Accordingly, this Court sitting as a federal habeas court in reviewing this petition, is guided by and restricted to applicable United States Supreme Court precedent.

In this case, the Court finds that the OCCA adjudicated petitioner's claims on direct appeal. Thus, the § 2254(d) standard of review governs this Court's review of petitioner's claims previously adjudicated on the merits by the OCCA. After careful review of the record in this case, the Court finds petitioner has failed to demonstrate that the decision of the OCCA was contrary to clearly established federal law as set forth by the Supreme Court or that there was an unreasonable application of Supreme Court law to the facts of this case. For the reasons discussed below, the

Court finds habeas corpus relief should be denied on each of petitioner's claims adjudicated on the merits by the OCCA on direct appeal.

**IV.**

The law applied by the OCCA is found in Ashe v. Swenson, 397 U.S. 436 (1970). In that case, the United States Supreme Court "established that the Fifth Amendment guarantee against double jeopardy, applicable to the states through the Fourteenth Amendment, embodies collateral estoppel as a constitutional requirement." Buck v. Maschner, 878 F.2d 344, 345 (10th Cir. 1989). Collateral estoppel, as defined by the Ashe court, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443. The Ashe Court expounded upon the doctrine of collateral estoppel in this manner:

> [T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a Court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. . . ."

Id. at 444 (citations omitted).

The OCCA held that the doctrine of collateral estoppel could be applicable in a criminal matter to an issue litigated in a prior civil matter. Smith, 46 P.3d at 138 (citing Yates v. United States, 354 U.S. 298, 335-36 (1957), overruled on other grounds, Burks v. United States, 437 U.S. 1, 2 (1978)); see United States v. Rogers, 960 F.2d 1501, 1507 (10th Cir. 1992). The OCCA also cited the relevant four-part test: "To apply collateral estoppel, the following elements must be

established: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1022 (10th Cir. 2001) (citing Dodge v. Cotter Corp., 203 F.3d 1190, 1197 (10th Cir. 2000)); see also United States v. Botefuhr, 309 F.3d 1263, 1282 (10th Cir. 2002).

The OCCA found that the doctrine of collateral estoppel did not apply because the issue decided in the juvenile and district court proceedings was not identical. The OCCA reasoned that, in the juvenile proceedings, the jury found that Smith had not committed sexual abuse that was "heinous or shocking" and had not committed sexual abuse that caused "severe harm or injury," whereas in the district court the jury was not required to find these aggravating factors in order to convict Smith of the crime with which he was charged. See Okla. Stat. tit. 10, § 7115. The OCCA further stated that it could not conclude that the factual issues decided by the juvenile court jury in Smith's favor were "ultimate issues" because the jury was instructed that it was not required to answer any of the special interrogatories affirmatively to find that the children were deprived.

The Oklahoma Children's Code provides that a court may immediately terminate the rights of a parent to a child, based upon a finding in a deprived child action that "the parent has physically or sexually abused the child or a sibling of such child or failed to protect the child or a sibling of such child from physical or sexual abuse that is heinous or shocking to the court [or that] the child or sibling of such child has suffered severe harm or injury as a result of such physical or sexual abuse, . . ." Okla. Stat. tit. 10, § 7006-1.1(A)(10)(a, b) (2001); see In re T.M., 6 P.3d 1087, 1092

11

(Okla. Civ. App. 2000). The interrogatories submitted to the juvenile court jury were based upon this language. The juvenile court judge apparently read the statute to permit termination of parental rights only if the jury found that the natural father had committed sexual abuse with the aggravating factors.

Thus, the juvenile judge relied on the statutory language of deprivation, as defined by 10 Okla. Stat.§ 7001-1.3: destitute; homeless; abandoned; without proper care or guardianship; unfit home based on neglect, cruelty or depravity on the part of parents, guardian or caregiver. (See Rebuttal, Dkt. #7, Ex. A, at 1.) The juvenile court reasoned that the jury could have found that E.S. and K.S. were deprived for reasons other than sexual abuse.[7] Nonetheless, because the jury found that Smith had not sexually abused a sibling of E.S. or K.S. with the aggravating factors, the juvenile court would not proceed to terminate Smith's parental rights. Thus, Smith escaped the adverse consequences of a deprived child finding because of the juvenile court jury's responses to the special interrogatories that he had not sexually abused a sibling to his daughters in an aggravating manner.

It is now clear from evidence previously unavailable to the Court[8] that the judge, the prosecution, and the defense in the juvenile proceedings believed that the jury found that Smith did not commit sexual abuse in any manner. That belief was erroneous but, in any event, does not compel a finding that the State is collaterally estopped from prosecuting Smith for sexual abuse of B.J. The first note sent by the jury to the judge was worded in hypothetical form: "[I]f we feel that

---

[7] Smith's counsel argued this point in response to the motion for new trial by reference to evidence presented during the juvenile court trial tending to prove that the children may not have had the proper care or guardianship. (See Rebuttal, Dkt. # 7, Ex. D, at 6-7.)

[8] Trial Tr. filed 5/24/05, 61:5-8; 61:10-21; 62:11-19; Motion for New Trial, filed 2/26/99, at 2-3; Motion for New Trial Tr., filed 5/24/05, at 3:13-19; 4:1-5; 11:14-19; 15:11-13; 31:12-17;33:18-34:18.

[B.J.] was abused but not by Kip Smith, should we still consider that [E.S.] and [K.S.] are deprived since Kip Smith has no control over [B.J.]?" The jurors did not find Kip Smith not guilty of sexually abusing B.J.; in other words, the note was not a verdict as to petitioner's guilt or non-guilt with regard to sexual abuse of B.J.

Indeed, the second note and the comment by the juror to the judge indicate that the jurors believed they would be hearing more evidence which would enable them to determine whether petitioner's rights should be terminated based on the allegations of sexual abuse. The special interrogatories served only to assist the juvenile court in determining whether to proceed with termination immediately; they are not a finding of "guilty" or "not guilty." The answers to the special interrogatories, like the jurors' notes to the juvenile court, were not verdicts finding petitioner "guilty" or "not guilty" of sexual abuse against B.J.

## V.

Smith argues that the OCCA erred in its collateral estoppel analysis because child sexual abuse is per se heinous and seriously harmful. Supp. Br., Dkt. # 57, at 9-10 (citing Eze v. Senkowski, 321 F.3d 110, 112 (2d Cir. 2003); Lindstadt v. Keane, 239 F.3d 191, 206 (2d Cir. 2001); Doe v. United States, 132 F.3d 1430, 1436 (Fed. Cir. 1997); State v. Reyes, 31 P.3d 516, 519 (Utah 2001); People v. Barciadealba, 736 P.2d 1240, 1243 (Colo. Ct. App. 1986)). The OCCA's finding implies that the juvenile court jury could have found that Smith committed sexual abuse of a child which was not "heinous or shocking"[9] or which did not cause "severe harm or injury." As

---

[9] The jury instructions in the juvenile proceeding against Smith define the term "shocking and heinous" as being "extremely wicked or evil, or designed to inflict a high degree of pain or suffering, or utter indifference to or enjoyment of the suffering of others." State Court Record of JVD-98-254, Dkt. # 20, Jury Instructions, filed Jan. 22, 1999.

13

recognized in the dissenting opinion of one OCCA judge, it is difficult to imagine that a child could be the victim of sexual abuse in a manner that is not "heinous or shocking" or that did not cause "severe harm or injury." Smith, 47 P.3d at 139. However, the Oklahoma statute appears to make that distinction, and it is not for this Court to question the language chosen by the Oklahoma legislature.

The juvenile judge's characterization of the jury's answer to the special interrogatories is not accurate: the jury did not render a verdict as to whether petitioner sexually abused B.J.; it rendered a verdict that the alleged victim's stepsisters were deprived. Hence, the OCCA's finding that the issue decided in the juvenile court was not identical with the one presented in the subsequent criminal action is not error.[10] Even if it were, such error as to the first element of collateral estoppel would not affect the outcome because of the differing standards of proof in a juvenile action and a criminal proceeding -- standards which implicate the fourth element of collateral estoppel: whether the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

On remand in this matter, Smith argues that the OCCA erroneously employed a double jeopardy analysis under Blockburger v. United States, 284 U.S. 299 (1932). Under Blockburger, double jeopardy does not attach if one of two successively prosecuted crimes requires proof of a fact the other does not. Id. at 304. Collateral estoppel, by contrast, requires a broader and more extensive approach. See Ashe, 397 U.S. at 443-44. Smith argues that collateral estoppel applies

---

[10] Since the matter did not proceed to termination of petitioner's parental rights (despite a finding that the alleged victim's stepsisters were deprived), one could argue that petitioner also failed to establish the second element of collateral estoppel, i.e., that the prior action (juvenile proceeding) was "finally adjudicated on the merits." See Harrison, 248 F.3d at 1022.

14

because the issue of identity of the sexual abuse perpetrator was decided in Smith's favor. See Harris v. Washington, 404 U.S. 55, 56-57 (1971). He also contends that collateral estoppel "protects criminal defendants from redetermination of evidentiary facts as well as ultimate facts." Supp. Br. Dkt. #57, at 16-17 (citing United States v. Hans, 548 F. Supp. 1119, 1126 (S.D. Ohio 1980)).

Since this Court's May 14, 2004 decision, the Tenth Circuit has decided Ives v. Boone, No. 02-6397, 2004 WL 1240875 (10th Cir. June 7, 2004) (unpublished). In Ives, the Tenth Circuit reviewed an appeal from a habeas petitioner convicted of incest. The Ives petitioner was convicted after a jury in a deprived child proceeding found that the incest victim was deprived as to her father based on allegations of sexual abuse. The Tenth Circuit found that the finding in the juvenile proceeding would not automatically establish the father's guilt in the subsequent criminal prosecution given the difference in standards of proof in the two types of proceedings, and therefore, the doctrine of collateral estoppel did not apply to preclude the subsequent criminal prosecution. Id. at **14-15. The Ives court noted that a deprived child finding requires "clear and convincing evidence." Id. at **15 (citing In re C.G., 637 P.2d 66, 70-71 (Okla. 1981)).[11] A criminal conviction requires proof "beyond a reasonable doubt." E.g., Huskey v. State, 989 P.2d 1, 5 (Okla. Crim. App. 1999). The Ives court specifically distinguished the OCCA's Smith decision because the deprived

---

[11] The Oklahoma Supreme Court actually held that the clear and convincing standard applied only in parental termination cases. It did not change the "clear weight of the evidence" or "preponderance of the evidence" standard of proof in deprived status proceedings. In re C.G., 637 P.2d at 72 n.15. Because the burden of proof at the later stage for terminating parental rights is higher than it is at the earlier stage for determining the deprived status of the children, a stipulation at the earlier stage does not preclude relitigation at the later stage of the facts to which the stipulation applied. In re G.G., 97 P.3d 1155, 1160 (Okla. Civ. App. 2004).

15

child hearing in <u>Ives</u> did not result in a jury finding on an ultimate issue in favor of the <u>Ives</u> petitioner. <u>Id.</u> at \*\*15.

This Court does not read the <u>Ives</u> decision as rejecting the outcome in <u>Smith</u> or otherwise overruling it even though the OCCA found collateral estoppel applicable in a criminal matter to an issue litigated in a prior civil matter. <u>Smith</u>, 46 P.3d at 138 (citing <u>Yates</u>, 354 U.S. at 335-36). Given the underlying rationale of <u>Ives</u>, the OCCA may have applied established federal law incorrectly, but that application was not unreasonable considering the different standards of proof between juvenile proceedings and criminal prosecutions.

In addition, public policy necessitates that the needs of children be met as quickly as possible. Indeed, one of the purposes of the "laws relating to children alleged or found to be deprived is to: . . . [p]rovide expeditious and timely judicial and agency procedures which protect the health, safety and welfare of the child; . . ." Okla. Stat. tit. 10, § 7001-1.1(B)(2). The State contends that this often means that a deprived child hearing takes place before all of the evidence is available. A finding that collateral estoppel is applicable, the State warns, "would inevitably have a chilling effect on swift action in deprived child proceedings, which would only serve to make the process longer and more uncertain for children. Supp. Resp. Br., Dkt. # 59, at 4-5.[12] Hence, the State argues that it should not be required to put on all of its evidence at a deprived child proceeding because of the lower burden of proof.

---

[12] The State has to make a stronger case to terminate parental rights (as opposed to having a child adjudicated deprived) due to the fundamental rights involved. <u>See</u>, <u>e.g.</u>, <u>In re T.C.</u>, 96 P.3d 811, 813 (Okla. Civ. App. 2004); <u>In re S.S.</u>, 90 P.3d 571, 575 (Okla. Civ. App. 2004). Since the juvenile court did not proceed to the termination stage, this Court need not decide whether a termination stage finding that Smith was not guilty of sexual abuse would foreclose subsequent criminal prosecution.

16

The Court is persuaded by this reasoning. The fourth element of a collateral estoppel finding is whether the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Harrison, 248 F.3d at 1022 (10th Cir. 2001). A juvenile court proceeding does not afford the State a full and fair opportunity to litigate whether a natural father has sexually abused a sibling to his natural children such that criminal sanctions attach. The State may not have, at that time, enough evidence to convince a jury that the children are deprived due to allegations of sexual abuse. It may garner such evidence at a later date that would enable it to meet the higher burden of proof in a criminal prosecution for sexual abuse of a minor child.[13]

## VI.

The doctrine of collateral estoppel does not bar subsequent criminal proceedings against a person based on ambiguous findings in a prior juvenile proceedings to determine the deprived status of children. If the law were otherwise, it would chill "deprived status" hearings because the district attorney would have to choose between the immediate safety of an abused child and the ultimate prosecution of the perpetrator. The rationale of the Ives opinion as to the differing standards of proof required for civil juvenile proceedings and criminal proceedings supports the conclusion that collateral estoppel is inapplicable under these circumstances, and that Smith is not in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §§ 2241, 2254(a).

---

[13]  California courts have counseled against broad application of collateral estoppel based on allegations of sexual abuse in juvenile court proceedings, given that victims of child molestation may not make complete disclosures of the extent of abuse initially, In re Jessica C., 113 Cal. Rptr. 2d 597 (Cal. Ct. App. 2001), and the volume of juvenile "dependency" matters, as well as the time pressures under which the juvenile system operates, increase the risk of error, Blanca P. v. Superior Court, 53 Cal. Rptr. 2d 687, 701 (Cal. Ct. App. 1996).

Accordingly, the Petition for Writ of Habeas Corpus (Dkt. # 1) is hereby **denied**.

**IT IS SO ORDERED** this 8th day of June, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT